## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| HOLLYWOOD FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESIDEO TECHNOLOGIES, INC., MICHAEL G. NEFKENS, and JOSEPH D. RAGAN III,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED<br><br>**ECF CASE** |

Plaintiff Hollywood Firefighters' Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Resideo Technologies, Inc. ("Resideo" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Resideo; and (d) other public information regarding the Company.

## INTRODUCTION

1.     This securities class action is brought on behalf of all persons or entities that purchased shares of Resideo's common stock between October 10, 2018 and October 22, 2019, inclusive (the "Class Period"). The claims asserted herein are alleged against

544481.1

Resideo and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.      Resideo manufactures home automation products, including, among other things, smart thermostats and security cameras. The Company was formed through a spin-off from parent Honeywell International, Inc. ("Honeywell"). Prior to the spin-off, the business that was to become Resideo comprised Honeywell's Home product portfolio and ADI Global Distribution business. Honeywell touted that, after the spin-off, Resideo would be the market leader in home heating, ventilation and air conditioning controls, and security markets, as well as a global distributor of security and fire protection products. As part of the spin-off, Resideo secured a license to continue using the Honeywell Home brand of products for 40 years.

3.      Resideo described itself as a leading global provider of residential comfort and security products, with 4.7 million connected customers and a network of more than 110,000 contractors. The Company also described itself as a leading global distributor of security products, primarily through its ADI brand, with a network of over 100,000 contractors across 17 countries.

4.      Leading up to the spin-off, Resideo touted to investors its "bright future" and strong competitive posture, stating that the Company's "competitors right now are the ones that are concerned." Just weeks after the spin-off, Resideo assured investors that the Company had a "Mature, Integrated Supply Chain" and that it was actively resolving the limited supply chain issues that arose following the spin-off. Throughout the Class Period,

Resideo told investors that there was strong demand for the Company's "connected" home products and that the Company remained competitive in the sale of nonconnected products.

5.      In truth, after the spinoff, Resideo continued to compete directly with its former parent, Honeywell, in the sale of comfort products, including thermostats. Honeywell maintained an inventory of a key product line, and cannibalized Resideo's business. Resideo focused on sales of newer model thermostats despite the popularity of the older model still being sold by Honeywell.

6.      In addition, Resideo's high-margin Residential Thermal Solutions ("RTS") business, which sells components to manufacturers of heating systems, faced supply chain issues that were driven by industry-wide declines. Despite those declines, Resideo misled investors about its RTS business generally and about the Company's management of its supply-chain in particular.

7.      After the close of trading on October 22, 2019, Resideo released preliminary financial results for the third quarter, and surprised investors by announcing earnings that significantly missed estimates. The Company also materially reduced its earnings guidance for 2019. The drivers of these disappointing results were the lower sales of thermostats and the performance of the RTS business. The Company also announced the replacement of Defendant Ragan as Chief Financial Officer. In response to these disclosures, the price of Resideo stock fell $5.73 per share, a decline of over 37%.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder

(17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  At the time of the spin-off from Honeywell, Resideo was headquartered in Golden Valley, Minnesota, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

<u>**PARTIES**</u>

A.     **Plaintiff**

10.     Plaintiff Hollywood Firefighters' Pension Fund is a pension fund established for the benefit of the current and retired firefighters of the City of Hollywood, Florida. Plaintiff manages over $248 million in assets for its beneficiaries.  As indicated on the certification submitted herewith, Plaintiff purchased Resideo common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

### B.   Defendants

11.   Defendant Resideo is a manufacturer of home technology products, including thermostats and home security products.  Incorporated in Delaware, the Company's headquarters at the time of the spin-off from Honeywell was located at 1985 Douglas Drive, Golden Valley, Minnesota.  During the Class Period, the Company opened a new headquarters in Austin, Texas. The Company's common stock trades on the NYSE under ticker symbol "REZI."  As of November 1, 2019, Resideo had over 122 million shares of common stock outstanding, owned by hundreds or thousands of investors

12.   Defendant Michael G. Nefkens ("Nefkens") is, and was at all relevant times, President and Chief Executive Officer of Resideo, as well as Chairman of the Company's Board of Directors.

13.   Defendant Joseph D. Ragan III ("Ragan") served as Executive Vice President and Chief Financial Officer of Resideo from the spin-off until November 6, 2019.

14.   Defendants Nefkens and Ragan are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Resideo, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants

knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

15.     The Class Period begins on October 10, 2018, when Resideo issued a press release, which it also filed with the SEC on Form 8-K, touting that "Resideo begins with an enviable market position, as a $4.7 billion business with a global addressable market of more than $35 billion that continues to grow thanks to favorable trends and consumer preferences. Our diversified revenue streams, strong segment profits and limited capital expenditure needs are just a few of the reasons Resideo has a bright future."

16.     The next day, October 11, 2018, Resideo CEO Nefkens assured investors that Resideo's market position was secure and not threatened by competition. Specifically, Nekfens stated, "I'm quite optimistic about our footprint and the ability to counter any trade issues. . . . We manufacture close to our customers . . . [and] [m]ost of our competitors manufacture in China. So, the reality is when NAFTA got ratified . . . I'm now feeling very good about our footprint. My competitors right now are the ones that are concerned."

17.     On November 8, 2018, Resideo issued a press release, which it also filed with the SEC on Form 8-K, announcing that members of the Company's management would present at the Baird 2018 Global Industrial Conference in Chicago, Illinois that day. The Company also filed on the same Form 8-K the presentation it prepared in connection with the conference. In the presentation, the Company touted its "Strong Operational and

Financial Performance with Consistent Growth and Margin Performance" and its "Mature, Integrated Supply Chain with Continued Application of Best-in-Class Honeywell Operating System" among the Company's "Key Investment Highlights."

18.    On November 13, 2018, after the market closed, Resideo issued a press release, which it also filed with the SEC on Form 8-K, announcing its third quarter 2018 financial results.  The press release quotes CEO Nefkens as saying "Our performance as part of Honeywell over the past three years demonstrates a well-run business that is on-track to deliver continued growth in 2018 and beyond."  Nefkens further touted the Company's "clear vision to deliver our next generation growth plan for Resideo."  The Company assured investors that, while the "Products segment performance was impacted by temporary supply chain issues" Resideo was "actively resolving" those issues.

19.    During a conference call with analysts the next day, November 14, 2018, CEO Nefkens again assured investors that the Company was "actively addressing [] supply-chain issues, and [] already seeing product flows moving back towards normal volumes."  Nefkens also touted demand for Resideo's connected products, saying "We see strong drivers for demand, which we expect to continue from the growing demand for and adaptation of smart and connected devices combined with the growing need for expertise to really help people make sense of these technologies and access them more easily. Our business is performing well. And we expect the powerful combination of scale, steady growth and market position will give us margin expansion and significant equity valuation uplift going forward."

20.     On December 12, 2018, Resideo management spoke at the Imperial Capital Security Investor Conference in New York, New York. Resideo VP and CFO Ragan touted the strength of Company's supply chain, emphasizing the purported efficiency of Resideo's global factories which had decreased from 50 to 18 over a ten-year period but doubled in revenue. Specifically, Ragan stated, "We have done a significant amount of work on the factory rationalization. 10 years ago, there were 50 factories and somehow Michael got from 50 to 18 and doubled the revenue, which is spectacular. . . . [T]he company is incredibly efficient from a manufacturing supply chain perspective."

21.     On March 7, 2019, Resideo issued a press release, which it also filed with the SEC on Form 8-K, reporting its fourth quarter and full-year 2018 results. The press release announced that Resideo delivered "results at high end of range" for the reporting periods and quoted CEO Nefkens as saying, "[W]e successfully executed the spin and met or exceeded financial expectations. The disruption from the spin is mostly behind us[.]" At the same time, the press release lowered revenue guidance for 2019 from Resideo's previous guidance of 4% to 2-5%, and projected EBITDA for 2019 in the range of $410 to $430 million. Also on March 7, 2019, Resideo held a conference call with analysts, on which an analyst asked about the changed guidance, saying it "was not exactly what we were expecting." Nefkens responded, "As you guys know with a spin, this effectively is the first time that we are having all of our costs under our control. So there's a lot in here. And we are at a strategic inflection point. I would tell you that we are at or ahead of where I expected to be." In response to the lowered guidance, the price of Resideo stock declined 23%, falling $5.79 per share that day. However, the Company continued to mislead

investors about the competitive landscape surrounding its RTS business and the strength of its supply chain.

22.     On May 9, 2019, before the market opened, Resideo held a conference call with analysts to discuss its first quarter 2019 financial results.  During the call, in discussing the Company's Comfort business, Nefkens stated that "[t]he product segment also saw tangible improvement in supply chain execution as we work through spin-related headwinds from the past 2 quarters."  In the Company's Residential Thermal Solutions business, which is a subsegment of the Company's Comfort segment in its Products & Solutions business, Nefkens touted the Company as having "a strong and leading market position and [is] growing well above market."  In addition, he stated that "for 2019, we're confident in our growth guidance in the upper end of our EBITDA guidance, and we remain optimistic."

23.     On June 6, 2019, Ragan represented Resideo at the Robert W Baird Global Consumer, Technology & Services Conference.  During the conference, Ragan stated that the Company "continue[s] to take share there" and it has "a compelling position in the nonconnected space."  With respect to its RTS business, Ragan touted it as "a great business for us."  And Ragan blamed the decline in performance of the Company's RTS business on "comps year-over-year [that] were tough" and "so the comps don't look as good as we would like" but assured investors that "that's really just a temporary issue."

24.     The statements set forth above in ¶¶15-23 were materially false and misleading.  In truth, Resideo faced serious competition for its products, including competition from Honeywell.  The Company also suffered from ongoing supply-chain

issues, particularly in the RTS business, and was not able to achieve the near-term results touted by Defendants.

25.     After the close of trading on October 22, 2019, Resideo issued a press release announcing preliminary financial results for the third quarter of 2019.  The Company surprised investors by disclosing that the "Products & Solutions segment experienced revenue decline in certain product families of the Comfort business and in its Residential Thermal Solutions (RTS) gas combustion business."  More specifically, the press release explained that "The Comfort business declines were primarily due to lower sales volumes in non-connected thermostats. We believe a poor pre-spin cutover from the prior generation of non-connected thermostats to the T-Series line impacted the adoption of mid-level T-Series thermostats. The cutover effects became markedly more pronounced in the third quarter after the prior generation of non-connected thermostats were discontinued."  Residio reported preliminary third quarter EBITDA of $77-79 million, severely missing analyst expectations of EBITDA in the range of $98-101 million.  The Company also reduced its 2019 full year EBITDA guidance to a range of $330-350 million, down significantly from the previously expected revenue of $410-430 million.  The Company also announced the replacement of Defendant Ragan as CFO.  This disclosure caused the price of Resideo stock to decline by over 37%, falling $5.73 per share.

26.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**LOSS CAUSATION**

27.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Resideo's common stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Resideo's stock fell precipitously, as the prior artificial inflation came out of the price over time.  As a result of their purchases of Resideo's stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**CLASS ACTION ALLEGATIONS**

28.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Resideo during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Resideo and their families and affiliates.

29.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of November 1, 2019, Resideo had over 122 million shares of common stock outstanding, owned by hundreds or thousands of investors.

30.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

       (a)     Whether Defendants violated the Exchange Act;

       (b)     Whether Defendants omitted and/or misrepresented material facts;

       (c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

       (d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

       (e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

       (f)     Whether Defendants' conduct impacted the price of Resideo common stock;

       (g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

       (h)     The extent of damage sustained by Class members and the appropriate measure of damages.

31.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

32.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

34.     Resideo's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

35.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Resideo who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## **PRESUMPTION OF RELIANCE**

36.     At all relevant times, the market for Resideo's common stock was an efficient market for the following reasons, among others:

(a)     Resideo common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Resideo filed periodic public reports with the SEC and NYSE;

(c)     Resideo regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Resideo was followed by securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

37.     As a result of the foregoing, the market for Resideo common stock promptly digested current information regarding Resideo from all publicly available sources and reflected such information in the price of Resideo common stock.   Under these circumstances, all purchasers of Resideo common stock during the Class Period suffered similar injury through their purchase of Resideo common stock at artificially inflated prices and the presumption of reliance applies.

38.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding their efforts to stuff the Company's sales channels with Standard Products which artificially inflated revenue—information that Defendants were obligated to disclose— positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Company's ability to sell its products to customers, that requirement is satisfied here.

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Resideo common stock at artificially inflated prices.

41.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to

make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Resideo common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

42.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

43.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Defendants engaged in this misconduct to conceal Resideo's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

45.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Resideo's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the

prices they paid, or at all, had they been aware that the market prices for Resideo's common stock had been artificially inflated by Defendants' fraudulent course of conduct.

46.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

47.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Resideo within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Resideo, the Individual Defendants had the power and ability to control the actions of Resideo and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

50.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

D.     As to the claims set forth under the Securities Act, awarding rescission or a recessionary measure of damages; and

E.     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## **JURY DEMAND**

51.     Plaintiff demands a trial by jury.

DATED: November 12, 2019

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

*/s/ Gregg M. Fishbein*

Gregg M. Fishbein, #202009
Kate M. Baxter-Kauf, #392037
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Plaintiff Hollywood Firefighters' Pension Fund*

Hannah Ross, *pro hac vice* forthcoming
Avi Josefson, *pro hac vice* forthcoming
Michael D. Blatchley, *pro hac vice* forthcoming
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Plaintiff Hollywood Firefighters' Pension Fund*

Robert D. Klausner
**KLAUSNER, KAUFMAN, JENSEN & LEVINSON, P.A.**
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff Hollywood Firefighters' Pension Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Jason Rosner, on behalf of Hollywood Firefighters' Pension Fund ("Hollywood Firefighters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hollywood Firefighters. I have reviewed the complaint with the Fund's legal counsel, and based on the legal counsel's knowledge and advice, authorize its filing.

2. Hollywood Firefighters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hollywood Firefighters is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hollywood Firefighters' transactions in the Resideo Technologies, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hollywood Firefighters has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *In re Transdigm Group, Inc. Securities Litigation*, No. 17-cv-1677 (N.D. Ohio)

6. Hollywood Firefighters will not accept any payment for serving as a representative party on behalf of the Class beyond Hollywood Firefighters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _12_ day of November, 2019.

Jason Rosner
Chairman
*Hollywood Firefighters' Pension Fund*

**Hollywood Firefighters' Pension Fund**
**Transactions in Resideo Technologies, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Spin-Off | 10/29/2018 | 666.667 | |
| Purchase | 11/7/2018 | 5,934 | 23.4272 |
| Purchase | 11/9/2018 | 700 | 21.7616 |
| Purchase | 12/12/2018 | 2,700 | 21.7617 |
| Purchase | 1/14/2019 | 1,000 | 21.6465 |
| Purchase | 1/22/2019 | 1,000 | 20.9934 |
| Purchase | 4/9/2019 | 2,000 | 19.8749 |
| Purchase | 4/10/2019 | 2,500 | 19.8928 |
| Purchase | 8/16/2019 | 4,500 | 14.3093 |
| Sale of Fractional Shares | 10/29/2018 | (0.667) | 26.5850 |